**UNITED STATES of America**

**v.**

**Henry LUCAS, Jr., Appellant.**

**No. 23394.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 21, 1970.

Decided March 8, 1971.

---

Mr. William J. Garber, Washington, D. C. (appointed by this court) for appellant.

Mr. Brian W. Shaughnessy, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., and John A. Terry, Asst. U. S. Atty., were on the brief, for appellee.

Before ROBINSON, MacKINNON and WILKEY, Circuit Judges.

PER CURIAM:

A jury convicted appellant on one count of carrying a pistol without a license [1] and one count of assault with a dangerous weapon.[2] The trial judge sentenced appellant to imprisonment for three to nine years on each count, the sentences to run consecutively. This appeal presents issues as to both the convictions and the sentences.

The charges against appellant emanated from an altercation in a tavern. The complainant, Thomas Robinson, left a booth, in which he was seated with friends, and went toward the record machine. On the way, for reasons differently described he became embroiled in an argument with appellant. Accounts at trial varied on the details, but eventually a shot rang out and Robinson fell, wounded in the stomach. Two of Robinson's companions testified that they saw appellant with a pistol in his hand, and that it was he who did the shooting. Two of appellant's companions testified that they did not see appellant fire the shot, and did not see either appellant or Robinson with a weapon. Robinson said he saw appellant with the pistol but still was uncertain as to who had shot him.[3] Appellant did not take the stand.

1. D.C.Code § 22–3204 (1967).

2. D.C.Code § 22–502 (1967).

3. Robinson explained that a crowd had gathered around, making it difficult for him to determine exactly who had fired

Appellant first contends that the evidence was insufficient to take either count to the jury. We disagree. The testimony, though inconsistent on some points, exerted enough of a thrust in the direction of appellant's guilt to require submission of the issues to the jury. To be sure, Robinson's testimony was equivocal, but two other eyewitnesses stated unequivocally not only that they saw appellant with a pistol but also that they saw him shoot Robinson with it.[4] While that testimony was contradicted by two other witnesses, it was for the jury to resolve the conflict.[5] We sustain the verdicts on each count.

■■■ Appellant next complains of the length of the sentence on the pistol-carrying conviction—imprisonment for a maximum of nine years. As appellant asserts, the statute defining the offense underlying that conviction limited any sentence of imprisonment to a one-year term unless appellant had previously been convicted of a violation of that statute or of a felony in the District of Columbia or elsewhere.[6] The record, however, is barren of any presentence notice to appellant or proof to the court that the statutory preconditions to imposition of the longer sentence existed as to him.[7] These deficiencies require us to vacate the sentence on the carrying count and to remand for resentencing thereon.[8]

■■■ Appellant, lastly, attacks the consecutiveness of the sentences imposed on the respective convictions for carrying a pistol and assault with a dangerous weapon.[9] The Government relies on Kendrick v. United States [10] where, in a situation factually the same as here, this court rejected the claim that those two statutory violations together constituted but a single offense.[11] With only that contention, the Kendrick court had no

---

the shot. Under closer examination, he expressed the belief that it was appellant.

4. See also notes 13–14, *infra*.

5. *E. g.*, Curley v. United States, 81 U.S. App.D.C. 389, 392, 160 F.2d 229, 232, cert. denied, 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947).

6. "No person shall within the District of Columbia carry either openly or concealed on or about his person, except in his dwelling house or place of business or on other land possessed by him, a pistol, without a license therefor issued as hereinafter provided, or any deadly or dangerous weapon capable of being so concealed. Whoever violates this section shall be punished as provided in Section 22–3215, unless the violation occurs after he has been convicted in the District of Columbia of a violation of this section or of a felony, either in the District of Columbia or in another jurisdiction, in which case he shall be sentenced to imprisonment for not more than ten years." D.C.Code § 22–3204 (1967).

7. See United States v. Marshall, 142 U.S. App.D.C. ——, 440 F.2d 195 (D.C. Cir. *en banc* June 30, 1970), cert. denied, 400 U.S. 909, 91 S.Ct. 153, 27 L.Ed.2d 148 (1970); United States v. Clemons, 142 U.S.App.D.C. ——, 440 F.2d 205 (D.C. Cir. *en banc* Nov. 20, 1970); Jackson v.

United States, 95 U.S.App.D.C. 328, 221 F.2d 883 (1955).

8. See the cases cited *supra* note 7. This court has already settled the claim, echoed by appellant, that the Fifth Amendment's Double Jeopardy Clause interposes a barrier to resentencing. United States v. Marshall, *supra* note 7, at 8 n. 10.

9. We treat the problem thus raised notwithstanding the remand for resentencing on the pistol-carrying count since, irrespective of the duration of any resentence to imprisonment, the question remains as to whether it can validly operate consecutively to the existing sentence on the other count.

10. 99 U.S.App.D.C. 173, 238 F.2d 34 (1956).

11. It was there argued that the pistol-carrying offense "was included in the assault count, since he was necessarily carrying the pistol when he shot the victim. Thus two offenses have been unlawfully carved out of a single act, he asserts, and he has been twice put in jeopardy for one offense." The court held, however, that

The contention is untenable. A single act which violates two statutes is punishable under both, unless the offenses defined therein are identical. The test of identity is whether the same evidence will sustain both charges. If one of the

occasion to address the different question appellant poses here: whether, though separate offenses warranting separate convictions, the penalties can be cumulated.[12] On the facts of the instant case, we answer that question in the affirmative.

Implicit in the jury's verdict on the pistol-carrying count is an underlying finding, with ample support in the evidence, that appellant had the pistol on his person for some appreciable time prior to the shooting.[13] The evidence, too, militates against the conclusion that appellant carried the pistol with the particular purpose in mind of using it to inflict injury on Robinson.[14] It portrays, instead, a sudden flare-up and a precipitous resort to the pistol during the affray. In sum, the record shows, we think clearly enough, the carrying of a pistol and the assault with the pistol as misdeeds separately motivated and separately acted out.[15]

■ Our recent decisions point out that consecutive sentences may be imposed where "the actions and intent of defendant constitute distinct successive criminal episodes, rather than two phases of a single" occurrence.[16] That, in

---

offenses requires an element of proof which the other does not, a conviction of one does not bar prosecution for the other. See Green v. United States, D.C.Cir., 1956 [98 U.S.App.D.C. 413] 236 F.2d 708, and the cases there collected. To sustain the pistol-carrying count the Government had to prove the weapon Kendrick carried was unlicensed, but to establish the assault charge that element of proof was unnecessary. Hence the appellant was not subjected to double jeopardy.
99 U.S.App.D.C. at 175, 238 F.2d at 36.

12. See, e. g., Fuller v. United States, 132 U.S.App.D.C. 264, 289, 407 F.2d 1199, 1224 (en banc 1968).

13. There was testimony indicating that appellant was in the tavern for a substantial period before the quarrel arose. While Robinson stated that he also saw another man with a gun that evening, there was no evidence tending to show that appellant acquired possession of the pistol in question after his arrival at the tavern. Indeed, one of appellant's companions, who seems to have entered the tavern with him and who in any event shared the same booth with him, avowed that he never saw appellant handle a pistol. These circumstances authorized an inference that appellant carried the pistol, and even that he had it when he came into the tavern. Moreover, the trial judge instructed the jury that an essential element of the offense, in addition to physical carriage, was an "intent to do the acts which constitute the carrying of the pistol without a license." See Cooke v. United States, 107 U.S.App.D.C. 223, 225, 275 F.2d 887, 889 (1960). The jury, to convict, had to find that appellant carried the pistol with that intent.

14. The trial record reveals that Robinson and appellant occupied nearby booths in the tavern without incident for quite a while before the altercation began. It also shows that the confrontation took place, not as a result of appellant coming to Robinson, but as Robinson reached appellant's booth en route to the record machine. The antagonists, it is clear, exchanged words for quite a while before the shot was fired—four or five minutes, one witness estimated. And although the jury, with instructions on self-defense not complained of, rejected that theory of the case, both defense witnesses testified that the shot did not come until Robinson made an ambiguous move susceptible to interpretation as an effort to get some object—a weapon for instance—from one of his table companions.

15. Compare United States v. Lewis, 140 U.S.App.D.C. 345, 347–348, 435 F.2d 417, 419–420 (1970). See also Irby v. United States, 129 U.S.App.D.C. 17, 18–19, 390 F.2d 432, 433–434 (en banc 1967). We realize, of course, that the antecedent carrying of the pistol made possible its use during the affray, but are unpersuaded that this one circumstance blended the series of events into a single episode. We have recognized that the carrying and assaultive deployment of dangerous weapons are discrete acts when not cojoined during a period of actual use for self-defense. Cooke v. United States, supra note 13, 107 U.S.App.D.C. at 224, 275 F.2d at 888; Dandridge v. United States, 105 U.S.App.D.C. 157, 158, 265 F.2d 349, 350 (1959). Cf. Wilson v. United States, 91 U.S.App.D.C. 135, 136, 198 F.2d 299, 300 (1952). We think they were clearly so here.

16. Smith v. United States, 135 U.S.App. D.C. 284, 285, 418 F.2d 1120, 1121

our view, was the case here.[17] We hasten to add, however, that we decide only the issue of legal propriety, and that "[t]he power to impose consecutive sentences is not * * * the same as wisdom in its exercise."[18] The sentencing judge, of course, in resentencing on the carrying charge following remand, is at complete liberty to determine in which direction the wiser exercise will lie.[19]

We affirm appellant's convictions, but vacate the sentence on the pistol-carrying conviction and remand the case for resentencing thereon. The sentence that permissibly may be imposed cannot exceed one year unless, after reasonable notice to appellant, the Government introduces evidence, with appellant and his counsel present, which satisfies the sentencing judge that prior to that offense appellant was convicted of a similar violation or a felony.[20]

So ordered.

(1969); United States v. Lewis, *supra* note 15, 140 U.S.App.D.C. at 348, 435 F.2d at 420.

17. The case at bar is markedly different from typical assault-type cases wherein the prohibition against consecutive sentences was applicable: Ladner v. United States, 358 U.S. 169, 173–179, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958) (counts of assaulting two federal officers where both wounded by single blast of shotgun); Smith v. United States, *supra* note 16, 135 U.S.App.D.C. at 285, 418 F.2d at 1121 (counts of assault with intent to kill and assault with a dangerous weapon where in same episode victim was attacked with a curling iron and hammer and then was thrown down stairway); Davenport v. United States, 122 U.S.App. D.C. 344, 345–346, 353 F.2d 882, 883–884 (1965) (counts of assault with a dangerous weapon and manslaughter arising from single act of fatally shooting victim); Ingram v. United States, 122 U.S. App.D.C. 334, 353 F.2d 872 (1965) (counts of assault with intent to kill and assault with a dangerous weapon emanating from a single assault with a knife).

18. Barringer v. United States, 130 U.S. App.D.C. 186, 187, 399 F.2d 557, 558 (1968), cert. denied, 393 U.S. 1057, 89 S.Ct. 697, 21 L.Ed.2d 698 (1969).

19. See Fed.R.Crim.P. 35.

20. Compare United States v. Marshall, *supra* note 7, at 9; United States v. Clemons, *supra* note 7, at 207; Jackson v. United States, *supra* note 7, 99 U.S. App.D.C. at 330–331, 221 F.2d at 885.